UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

KENNETH A.,                                               Case No. 3:17-cv-01575-JR

               Plaintiff,                                   OPINION & ORDER

     v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                         Defendant.

RUSSO, Magistrate Judge:

Kenneth A.[1] ("plaintiff") moves for attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"). 28 U.S.C. §§ 2412 *et. seq.*; see also (doc. 24). Plaintiff's counsel seeks an award of fees and costs in the amount of $14,832.97 for 74 hours expended on plaintiff's underlying successful Social Security disability appeal. Pl.'s Application for Fees Under the EAJA (doc. 24) ("Pl.'s Br."). For the reasons that follow, plaintiff's application is GRANTED IN PART.

---

[1] In the interest of privacy, this Opinion and Order ("O&O") uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this O&O uses the same designation for a non-governmental party's immediate family member(s).

## BACKGROUND

Plaintiff filed for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act") on June 12, 2014. On July 7, 2016, an Administrative Law Judge ("ALJ") issued a decision finding plaintiff not disabled. After exhausting his administrative remedies, plaintiff sought judicial review in this Court of the Social Security Commissioner's ("Commissioner") final decision. On April 9, 2018, plaintiff filed a 35-page opening brief arguing the ALJ erred by: (1) rejecting her subjective symptom statements; (2) rejecting the lay witness testimony; (3) rejecting the medical opinion of plaintiff's treating physician; and (4) concluding that four of plaintiff's impairments were not severe. See (doc. 12). On July 6, 2018, the Commissioner filed its response. (doc. 17). On July 19, 2018, plaintiff filed a 20-page reply arguing plaintiff was entitled to an immediate payment of benefits. (doc. 18).

On September 4, 2018, the Court issued a Findings and Recommendation ("F&R") reversing and remanding the Commissioner's decision and ordering an immediate payment of benefits. (doc. 19). No objections were filed to the F&R. The district judge adopted the F&R and entered judgment on November 12, 2018. See Kenneth A. v. Berryhill, No. 3:17-cv-01575-PK, 2018 WL 5929674 (D. Or. Sep. 4, 2018), report and recommendation adopted, 2018 WL 5928045 (D. Or. Nov. 12, 2018) (doc. 22). On December 12, 2018, plaintiff moved for attorney's fees (doc. 24) pursuant to the EAJA. Defendant opposes the award.

## STANDARD OF REVIEW

A party who prevails against the United States in a civil action is entitled, in certain circumstances, to an award of attorney's fees and costs pursuant to the EAJA. 28 U.S.C. § 2412. Under the EAJA, a court may award attorney's fees and costs to a plaintiff's attorney in an action against the United States or any agency or official of the United States if:

> (1) the plaintiff is the prevailing party, (2) the government has not met its burden to show that its positions were substantially justified or that special circumstances make an award unjust, and (3) the requested attorney's fees and costs are reasonable.

Perez-Arellano v. Smith, 279 F.3d 791, 792 (9th Cir. 2002); see also 28 U.S.C. § 2412(d)(1)(A).

A "prevailing party" is one who has been awarded relief by the court on the merits of at least some of his claims. Hanrahan v. Hampton, 446 U.S. 754, 757–58 (1980). A prevailing plaintiff is not entitled to attorney's fees under the EAJA when the Commissioner's positions were substantially justified. Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir. 2002). An award of attorney's fees under EAJA must also be reasonable. 28 U.S.C. § 2412(d)(2)(A).

## DISCUSSION

Pursuant to the EAJA, plaintiff moves for $14,832.97 in attorney's fees. The Commissioner does not contend that plaintiff is not the prevailing party, that plaintiff's hourly rates are unreasonable, or that the position of the United States was substantially justified. The Commissioner argues that the application for fees is premature and that the time expended by plaintiff's counsel on the case was unreasonable under the EAJA.

### I. Timeliness of the Application

The Commissioner argues the application should be denied as premature. Under the EAJA, a party may file an application for fees "within 30 days of final judgment in the action." 28 U.S.C. 2412(d)(1)(B). Judgment was entered in this case on November 12, 2018. Judgment 1 (doc. 23). Barring post-judgment litigation, a judgment is not final until 60 days after its entry. Hoa Hong Van v. Barnhart, 483 F.3d 600, 607 (9th Cir. 2007). Plaintiff argues the judgment became final on November 12, 2018, because the parties waived appellate review by not objecting to the F&R; however, the Ninth Circuit has explained that the failure to object to an

F&R does not waive the right of appeal. See Gonzalez v. Sullivan, 914 F.2d 1197, 1200 (9th Cir. 1990). The Commissioner requests plaintiff's motion be denied as moot or alternatively that the Court defer ruling on the motion until the time for appeal has run. Given that this application is fully briefed, in the interest of judicial economy, and that the judgment became final on January 11, 2019, the time for appeal has run and it is now appropriate to rule on the motion.

II.     **Reasonableness of Fees**

An award of attorney's fees pursuant to the EAJA must be reasonable. 28 U.S.C. § 2412(d)(2)(A); see also Costa v. Comm'r of Soc. Sec. Admin., 690 F.3d 1132, 1135 (9th Cir. 2012). A district court has an independent duty to review the fee request to determine reasonableness. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008); Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir. 1992). In deciding fee petitions, a court must determine the reasonable number of hours expended by counsel, and counsel's reasonable hourly rate. Hensley, 461 U.S. at 434. The fee applicant bears the burden of documenting the hours expended and must submit evidence in support of the hours worked. Gates, 987 F.2d at 1397. The opposing party then has the burden of rebuttal which requires submission of evidence to challenge the accuracy and reasonableness of the hours charged. Id. at 1397–98. Where documentation is inadequate, the court may reduce the requested award. Hensley, 461 U.S. at 433.

A court may not apply a *de facto* cap on the number of hours for which an attorney can be compensated under EAJA in Social Security disability appeals. Costa, 690 F.3d at 1136. In other words, Social Security appeals must be considered on an individual basis. Id. A critical factor in evaluating the reasonableness of the EAJA request is the "degree of success attained." Id. Although deference should generally be given to the winning lawyer's professional judgment,

Page 4 – FINDINGS AND RECOMMENDATION

"a district court can impose a reduction of up to 10 percent – a 'haircut' – based purely on the exercise of its discretion and without more specific explanation." Costa, 690 F.3d at 1136 (quoting Moreno, 534 F.3d at 1112 ). A specific explanation is required, however, "where the district court . . . cut[s] the number of hours by twenty to twenty-five percent." Id.

Here, plaintiff requests $14,832.97 in attorney fees to compensate for 74 hours expended on the underlying appeal. The Commissioner provides three rationales for contesting the fees as unreasonable. The Commissioner argues that (1) 2.1 hours were billed prior to the formalization of the attorney-client relationship and were unrelated to the litigation; (2) 3.5 hours were billed for clerical tasks; and (3) 70.5 hours were redundant or excessive.[2] See Def.'s Br. 5 (doc. 28).

### A. Prior to the Attorney-Client Relationship

The attorney client relationship was not formalized until the Retainer Agreement was signed on October 3, 2017. Retainer Agreement 1-2 (doc. 24-2). Plaintiff billed 5.1 hours prior to that date. Billing Statement 1 (doc. 24-1). Only fees "'reasonably expended *on the litigation*'" are compensable. Webb v. Bd. of Educ. Of Dyer County, Tenn., 471 U.S. 234, 242 (1985) (quoting Hensley, 461 U.S. at 433) (emphasis in original). The Commissioner concedes some of the 5.1 hours were reasonable but argues that time spent discussing the possibility of the case and the fee agreement was not in furtherance of the litigation. The Commissioner argues that an initial consultation is not properly billed to the client, and therefore, is not properly billed to the government. Def.'s Br. 6 (doc. 28) (citing Hensley, 461 U.S. at 434). The Commissioner asserts that 2.1 of the 5.1 hours should be excluded.

The Commissioner is correct that hours not properly billed to one's client are not properly billed to the government; however, Webb does not preclude fees for an initial

---

[2] The Commissioner alleged that some of the improperly billed hours fit in two or more of the above-mentioned categories.

Page 5 – FINDINGS AND RECOMMENDATION

consultation. Rather, Webb disallowed fees for time spent years before the complaint was filed, finding that such time was not "expended on the litigation" or "fairly comprehended" as part of the costs of the action. Webb, 471 U.S. at 243. The Supreme Court further explained that "some of the services performed before a lawsuit is formally commenced by the filing of a complaint are performed 'on the litigation.'" Id. at 243. Here, the challenged hours were billed in the weeks leading up to filing the action and appear to have been performed "on the litigation." See Billing Statement 1 (doc. 24-1) (describing fees for initial consultation and subsequent communications with plaintiff regarding the litigation).

Moreover, the Commissioner did not cite, and the Court is unaware of any authority supporting the proposition that attorneys are precluded from billing clients for an initial consultation. Thus, it was not improper to bill for the initial consultation.

**B.     Clerical Tasks**

Clerical tasks are subsumed in a firm's overheard and should not be charged to the client. Nadarajah v. Holder, 569 F.3d 906, 921 (9th Cir. 2009). The Commissioner argues service of process and filing *in forma pauperis* ("IFP") applications are considered clerical tasks. See Def.'s Br. 6 (doc. 28) (citing Woll v. Comm'r Soc. Sec. Admin., No. 3-13-cv-01877-MA, 2015 WL 3562191, at *2 (D. Or. June 5, 2015)). The Commissioner argues that the activities of 9-12-17, 9-21-17, 10-2-17, 10-5-17, 10-6-17, and 10-18-17, constituted clerical work and the fees for such activities should be reduced. The challenged activities include: meeting "with client to get CD of file and briefly discuss documents" (0.3 hours); preparing "retainer agreement" (0.2 hours); drafting "letter to client re court process, possible outcomes, fee, IFP, Treasury Offset Program" (0.7 hours); "[t]elephone conferences with client to answer questions about IFP application and fee agreement" (0.5 hours); drafting complaint and reviewing cover sheet and

Page 6 – FINDINGS AND RECOMMENDATION

IFP application (0.5 hours); reviewing order granting IFP status (0.1); reviewing proposed summons before filing (0.1); phone conference with client (0.1); and drafting letter to AUSA with plaintiff's SSN (0.1). Billing Statement 1 (doc. 24-1)

Plaintiff argues the time billed for the IFP application involved the exercise of legal judgment or the provision of legal advice. Plaintiff further argues that because the IFP application is signed under penalty of perjury, litigants may have questions as they complete the form, and those questions may require legal advice. The Commissioner cites Woll for the proposition that IFP applications constitute clerical tasks which are not properly billed; however, in Woll, the court did not exclude the time billed for a client conference where the attorney assisted the client in completing the IFP affidavit. Woll, 2015 WL 3562191, at *2. Rather, Woll reduced the time spent assisting the client with the IFP affidavit from 1 hour to 0.5 hours. Id. Thus, Woll stands for the proposition that 0.5 hours is a reasonable amount of time for assisting a client with an IFP application. Here, plaintiff's counsel billed 0.5 hours for answering questions about the IFP application. Billing Statement 1, (doc. 24-1). Thus, the time billed for assistance with the IFP application was reasonable.

Moreover, in Woll, plaintiff's counsel billed 1 hour for drafting and filing the complaint and the court reduced it to 0.5 hours. Woll , 2015 WL 3562191, at *2. Here, plaintiff's counsel billed 0.5 hours for drafting and filing the complaint. Billing Statement 1, (doc. 24-1). Accordingly, the time billed for drafting and filing the complaint was reasonable.

The Commissioner additionally argues that many of the client communications "should have been rote and clerical in nature." Def.'s Br. 6 (doc. 28). Plaintiff argues that defendant does not know what the communications actually contained and has no right to know because it is privileged. Nevertheless, the communication on 9-21-17, which consisted of a "letter to client re

Page 7 – FINDINGS AND RECOMMENDATION

court process, possible outcomes, fees, IFP, [and the] Treasury Offset Program" was billed for 0.7 hours. Billing Statement 1 (doc. 24-1). The subjects addressed in that letter would be the same or substantially similar for any Social Security case; therefore, the Court finds it was unreasonable to bill 0.7 hours for drafting a letter that merely provides information regarding standard Social Security issues. Accordingly, the Court deducts 0.3 hours expended in drafting this letter.

The Commissioner also argues that communications regarding the filing of documents should be considered clerical tasks. The Commissioner refers to activities on 7-19-18 and 9-20-18, which were billed as drafting "a letter to client to confirm filing of reply and explain case status" (0.2 hours); a telephone conference with client to report no objections filed (0.1 hours); and preparing a "certificate of net worth and draft[ing] letter to client explaining its purpose" (0.2 hours). Notifying the client that either a document has been filed or objections have not been filed, is clerical in nature. These two tasks totaled 0.3 hours. The Commissioner seeks a one-third reduction for these tasks, and the Court agrees. As such, the Court deducts 0.1 hours expended in providing updates on the filing status of documents in the case.

Additionally, plaintiff concedes that the 0.1 hours charged for drafting the letter to the assistant U.S. Attorney to provide plaintiff's SSN was arguably clerical and voluntarily withdraws the 0.1 hours billed on 10-6-17. Pl.'s Reply 8 (doc. 29).

    C.    **Redundant and Excessive Tasks**

The Commissioner argues it was excessive to bill 0.1 for reviewing filings on 10-6-17, 10-18-17, 5-3-18, and 6-6-18. "[B]illing increments . . . can be problematic when small tasks that require less [time] . . . are recorded separately." Chanthavong v. Astrue, 2011 WL 6751930, at

Page 8 – FINDINGS AND RECOMMENDATION

\*8 (E.D. Cal. Dec. 23, 2011). This can apply in the context of reviewing routine docketing activities. Id.

Plaintiff argues that while minimum billing increments can add up to more time than the tasks actually took, plaintiff's attorneys are discouraged from block billing and "the Ninth Circuit condones reducing hours when a court is faced with block-billed time entries." Robinson v. Open Top Sightseeing San Francisco, LLC, 2018 WL 2088392 at \*3 (N.D. Cal. May 4, 2018) (citing Welch v. Metro. Life Ins. Company, 480 F.3d 942, 948 (9th Cir. 2007)). Plaintiff's counsel testified in her declaration that when she performs "multiple tasks for a client on a particular day, the total time [she] bill[s] never exceeds the actual time spent, and [she] divide[s] the billing increments as accurately as possible among the various tasks." Mapes Decl. 3 (doc. 30). Plaintiff's counsel further explained that "the only entries that potentially represent an occasion when the minimum billing increment of 0.1 hour[s] exceeds the time counsel actually spent occurred on three days that hold only one entry, for 0.1 hour[s] each: 2-7-18, 5-3-18, and 6-6-18." Pl.'s Reply 9 (doc. 29). Of those three entries the Commissioner challenges only two, and the Commissioner seeks to have those 0.2 hours each reduced by one-third. Def.'s Br. 5 (doc. 28). Plaintiff voluntarily withdraws 0.1 hours based on "the chance that either or both of the 0.1-hour entries on 5-3-18 and 6-6-18 were excessive." Pl.'s Reply 9 (doc. 29) (internal quotations omitted).

The Commissioner argues that judges in this district have reduced fees as unreasonable when there was an excessive amount of time spent briefing routine issues. See Def. Br. 8 (doc. 28) (citing Parrish for Estate of Parrish v. Comm'r Soc. Sec. Admin., No. 1:16-cv-02246-BR, 2018 WL 1402584, at \*3 (D. Or. Mar. 20, 2018); Elstun v. Comm'r Soc. Sec. Admin., No. 6:12-cv-01811-MA, 2014 WL 667587, at \*3 (D. Or. Feb. 20, 2014)). The Commissioner further

Page 9 – FINDINGS AND RECOMMENDATION

argues that because the record was only 589 pages and the opening brief set out only three "routine" issues, it was excessive to bill 11.9 hours for reviewing the record, 30.8 hours for writing the opening brief, and 18 hours drafting the reply brief. Def.'s Br. 8 (doc. 28). The Commissioner seeks a one-third reduction on the 60.7 hours billed for these activities. Def. Br. 5 (doc. 28).

The Commissioner first argues it was excessive to bill 11.9 hours for reviewing the record because it totaled only 589 pages. The Commissioner asserts that in the District of Oregon, the length of an administrative record in a social security case is around 463 to 605 pages. Def. Br. 8 (doc. 28) citing Young v. Comm'r Soc. Sec. Admin., No. 1:15-cv-01688-MA, 2017 WL 740992, at *3 (D. Or. Feb. 24, 2017) (collecting cases)). The Court notes that at 589 pages, the record in this case would still be on the upper end of this range. Furthermore, one court in this district found 24 hours would be a reasonable time to review a 900-page record. See Parrish, 2018 WL 1402584, at *3. In another case, 10 hours was determined to be a reasonable amount of time to review a 463-page record. Kelly v. Commissioner Social Security, No. 1:15-cv-00762-MA, 2016 WL 4941996, at *3 (D. Or. Sep. 15, 2016). As such, 11.9 hours appears to be a reasonable amount of time to review a nearly 600-page record.

The Commissioner next argues it was excessive to bill 30.8 hours for writing the opening brief because the brief set out "only three routine issues." Def.'s Br. 8 (doc. 28). The Commissioner argues courts in this district have reduced fees for excessive time briefing routine issues. In Parrish, the court found 37.6 hours for a 35-page opening brief addressing routine issues excessive and reduced the fees to 20 hours. See Parrish, 2018 WL 1402584, at *3. However, overall the court in Parrish found 44 hours was a reasonable amount of time to spend reviewing the record and drafting the opening brief. Id. Here, plaintiff spent a total of 42.7 hours

Page 10 – FINDINGS AND RECOMMENDATION

reviewing the record and drafting the opening brief. Although the Parrish record was longer, the length of the record does not necessarily reflect the factual complexity of the case. See Fischer v. Colvin, No. 6:15-cv-00707-AA, 2016 WL 6908099, at *2 (D. Or. Nov. 21, 2016) (citing Buzbee v. Colvin, No. 3:15-cv-00597, 2016 WL 2756173, at *1 (D. Or. May 11, 2016)). Fischer also noted that a 37-page brief was about twice the length of the average social security brief, and it was therefore reasonable for plaintiff to request twice the hours as is typically requested in a Social Security case. Fischer, 2016 WL 6908099, at *2. Similarly, plaintiff's brief here was 35 pages long.

The Commissioner also relies on Elstun, where the court held 40.94 hours writing a 53-page opening brief was excessive and reduced the fees by 25%. No. 6:12-cv-01811-MA, 2014 WL 667587, at *3–4. Even after the reduction, Elstun allowed plaintiff 30 hours for writing the opening brief. Id. Here, plaintiff has billed 30.8 hours for writing the opening brief. Although the opening brief in Elstun was 53 pages and the opening brief in this case was 35 pages, the Court must also consider the quality as well as the quantity. Notably, in Elstun, the court found that four of the eight issues raised by plaintiff were frivolous. Id. The court therefore found a reduction in hours was justified because a reasonable attorney would have omitted the frivolous arguments. Here, given that plaintiff did not make any frivolous arguments, such a justification for reducing the fees does not exist Moreover, of the four non-frivolous arguments made in Elstun, plaintiff only prevailed on one. Id. In contrast, none of plaintiff's arguments here were frivolous and plaintiff prevailed on every issue.

Moreover, the reduction in Elstun was based in part on the results obtained. There, the plaintiff obtained only a remand for proceedings on a narrow issue, whereas here, plaintiff obtained a remand for payment of benefits. Id.; see also Opinion & Order 2 (doc. 22) (adopting

Page 11 – FINDINGS AND RECOMMENDATION

the Findings & Recommendation and remanding for benefits). Courts in this District have repeatedly held that the critical factor in evaluating the reasonableness of the EAJA request is the "degree of success attained." Denton v. Astrue, No. 3:11-cv-01066-SI, 2013 WL 673860, at *1 (D. Or. Feb. 25, 2013) (citing Hensley, 461 U.S. at 424); Parsons v. Colvin, No. 3:12-cv-00083-HU, 2014 WL 1571808, at *2 (D. Or. Apr. 18, 2014); Becker v. Astrue, No. 3:10-cv-01469-SI, 2012 WL 3835084, at *2 (D. Or. Sep. 4, 2012). Again, plaintiff here obtained the highest degree of success.

Furthermore, the Commissioner's argument that the issues in this case were routine, is unavailing. As an initial matter, "the term 'routine' is a bit of a misnomer as social security disability cases are often highly fact-intensive and require careful review of the administrative record, including complex medical evidence." Costa, 690 F.3d at 1134 n.1. The Commissioner alleges plaintiff only challenged "the ALJ's weighing of one medical opinion." Def.'s Br. 8 (doc. 28). However, a review of plaintiff's brief reveals that the Commissioner's characterization is not entirely accurate. Although plaintiff only challenged the *rejection* of one medical opinion, he challenged the ALJ's "*weighing*" of four separate medical opinions. Plaintiff challenged the rejection of Dr. Brooks' opinion and as part of that analysis argued the ALJ had improperly relied on the opinions of three other doctors. See Pl.'s Br. 20-33 (doc. 12). That argument required the analysis of all four doctors' opinions. Furthermore, this case involved the unusual circumstances in which the ALJ had credited the opinion of a resident physician over the opinion of that resident's supervising physician. This elicited a detailed and fact-intensive analysis regarding both the resident and supervising physicians' opinions. Id. at 22-31.

Additionally, in challenging the ALJ's finding at step two, plaintiff alleged the ALJ erred with regard to four different impairments. Notably, plaintiff prevailed on all four challenged impairments. F&R 21-23 (doc. 19).

Finally, the Court notes that while the Commissioner asserts plaintiff raised only three issues, a review of plaintiff's briefing reflects that plaintiff, in fact, raised and argued a fourth issue—that the ALJ improperly rejected the lay witness testimony of plaintiff's girlfriend. See Pl.'s Br. 18-20 (doc. 12). Notably, plaintiff also prevailed on this issue as the Court determined that the ALJ improperly rejected the lay witness testimony. See F&R 20-21 (doc. 19). Although this issue was contained within plaintiff's first section addressing plaintiff's subjective symptom testimony, the erroneous rejection of the lay witness testimony constitutes a separate issue.

The Commissioner next argues that 2.5 hours billed for speaking and writing to plaintiff were redundant and excessive because the litigation was routine, and plaintiff had no mental impairments. The fact that plaintiff had no mental impairments does not mean plaintiff would not have questions for his attorney that would require explanation. Moreover, as noted above, defendant does not know the substance of the communications, which are privileged. Finally, as explained previously, the issues in this case were not "routine" as alleged by the Commissioner.

With regard to the reply brief, the Commissioner argues it was excessive to bill 18 hours for drafting a 20-page reply in response to the 16-page response brief submitted by the Commissioner. Plaintiff argues the lengthy reply was made necessary by the fact that the Commissioner raised a number of *post hoc* arguments in her brief. See F&R 16, 18-19, 21 (doc. 19) (noting four *post hoc* arguments raised by the Commissioner). Plaintiff further argues additional briefing was required to correct the Commissioner's mischaracterizations of the record. See Id. at 11, 17-18. (noting three ways in which the Commissioner mischaracterized the

Page 13 – FINDINGS AND RECOMMENDATION

record). The Court finds that the *post hoc* arguments and the mischaracterizations of the record justified a lengthier reply brief.

The Court also notes that the question of whether the proper remedy was a remand for additional proceedings or a remand for benefits was another issue argued by plaintiff in both the opening and reply briefs. See Pl.'s Br. 36-37 (doc. 12); Pl.'s Reply 17-19 (doc. 18). Plaintiff prevailed on this issue and obtained a remand for payment of benefits. As discussed above, the results obtained are an important consideration in determining the reasonableness of fees. See Denton, 2013 WL 673860, at *1 (citing Hensley, 461 U.S. at 424); see also Elstun, 2014 WL 667587, at *3. Here, the fact that plaintiff obtained a remand for benefits provides further indication that the fees were reasonable.

In summary, of the $14,832.97 plaintiff initially requested: 0.1 hours billed on 10-16-17 has been voluntarily withdrawn (0.1 x 2017 rate of $196.79 = $19.68), 0.1 hours billed on either 5-3-18 or 6-6-18 have been voluntarily withdrawn (0.1 x 2018 rate of $200.78 = $20.08), the Court has deducted 0.3 hours billed on 9-21-17 (0.3 x 2017 rate of $196.79 = $59.04), and the Court has also deducted 0.1 hours billed on either 7-19-18 or 9-20-18 (0.1 x 2018 rate of $200.78 = $20.08). Accordingly, the Court awards $14,714.09 ($14,832.97 - $19.68 - $20.08 - $59.04 - $20.08) in attorney's fees for time spent on the underlying litigation.

### III.  Fees for Fees

The Commissioner argues that if a "reasonableness reduction is warranted, then the Court should deny any fees for fees." Def.'s Br. 9 (doc. 28) (citing Comm'r, I.N.S. v. Jean, 496 U.S. 154, 165 (1990)). Nowhere in Jean does the Court establish a per se rule that where a reasonableness reduction is warranted, the Court should deny any "fees for fees." Rather, the Court explained that district courts are required to:

> consider the relationship between the amount of the fee awarded and the results obtained, fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation. For example, if the Government's challenge to a requested rate for paralegal time resulted in the court's recalculating and reducing the award for paralegal time from the requested amount, then the applicant should not receive fees for the time spent defending the higher rate.

Jean, 496 U.S. at 163 n.10. Accordingly, Jean stands for the proposition that fees for fees should be denied only for time spent defending rates that were reduced, whereas time spent defending rates that the Court ultimately finds reasonable would be compensable.

Courts may apply "the same percentage of merits fees ultimately recovered to determine the proper amount of the fees-on-fees award." Schwarz v. Secretary of Health & Human Services, 73 F.3d 895, 909 (9th Cir. 1995); see also Wills v. Colvin, No. 3:12-cv-01227-BR, 2014 WL 3741851, at *4-5 (D. Or. Jul. 29, 2014) (applying the proportionate share method described in Schwarz); Bailey ex rel. Pace v. Colvin, No. 3:12-cv-01092-BR, 2013 WL 6887158, at *4-5 (D. Or. Dec. 31, 2013) (same).

The Ninth Circuit explains that the use of percentages does not discharge "the district court from its responsibility to set forth a 'concise but clear' explanation of its reasons for choosing a given percentage reduction[.]" Gates, 987 F.2d at 1400. Here, because plaintiff prevailed on 99% of the fees requested in the initial application, the proportional amount of fees for fees is reasonable.[3] See Wills, 2014 WL 3741851, at *4-5 (holding that the proportionate share method was reasonable where plaintiff prevailed on 100% of the fees requested); Bailey, 2013 WL 6887158, at *4-5 (holding that the proportionate share method was reasonable where plaintiff prevailed on 98% of the fees requested). In other words, because plaintiff prevailed on nearly all the fees requested, it is reasonable to recover fees-for-fees for nearly all the time spent

---

[3] Plaintiff sought fees for 74 hours which the Court reduced to 73.4 hours (73.4/74 =99%).

defending the originally requested fees. Plaintiff requested $1,204.68 in fees-for-fees; as such, applying the proportionate share method, the Court awards plaintiff $1,192.63 ($1,204.68 x .99) in fees for fees. Therefore, in total, the Court awards plaintiff $15,906.72 ($14,714.09 + $1,192.63) in attorney's fees.

IV.    **Disbursement**

Plaintiff's award is subject to any offset allowed pursuant to the Department of Treasury's Offset Program. See Astrue v. Ratliff, 560 U.S. 586, 589-93 (2010). Plaintiff requests that in accordance with the assignment in plaintiff's fee agreement, if there is no debt subject to offset, the attorney's fees be paid directly to plaintiff's counsel. Pl.'s Br. 6 (doc. 24) (citing Retainer Agreement 1 (doc. 24-2). In Ratliff, the Supreme Court held EAJA fee awards are payable to the plaintiff, not the plaintiff's attorney, and are therefore subject to an offset to satisfy any pre-existing debt the plaintiff may owe to the federal government. Ratliff, 560 U.S. at 591-93. Although plaintiff assigned his claim to his attorney, "that assignment runs afoul of the Assignment of Claims Act, 31 U.S.C. § 3727(b), which forbids the assignment of claims against the U.S. government until after those claims are actually allowed." Matthews v. Astrue, No. CIV 11-290-TUC-LAB, 2013 WL 500955, at *1 (D. Ariz. Feb. 11, 2013); Yesipovich v. Colvin, 166 F.Supp.3d 1000, 1011 (N.D. Cal. 2015). Thus, the EAJA award shall be made payable to plaintiff and delivered to plaintiff's attorney; however, if the United States Department of the Treasury determines plaintiff does not owe a federal debt and the Government waives the requirements of the Assignment of Claims Act, the EAJA award shall be paid directly to plaintiff's attorney pursuant to plaintiff's assignment of his interest in the fee award. Matthews, 2013 WL 500955, at *1; Kirk v. Berryhill, 244 F. Supp. 3d 1077, 1085 (E.D. Cal. 2017); Yesipovich, 166 F. Supp. 3d at 1011.

## CONCLUSION

Pursuant to 28 U.S.C. §§ 2412 *et. seq.*, plaintiff's application (doc. 24) is GRANTED IN PART. Plaintiff is awarded $15,906.72 in fees pursuant to the EAJA. As discussed above, consistent with Ratliff, 560 U.S. 586, this EAJA award is subject to any offset allowed under the Treasury Offset Program.

DATED this 30th day of January 2019.

                                         /s/ Jolie A. Russo
                                             Jolie A. Russo
                                    United States Magistrate Judge